**Brenda Kay WALL (Washburn), Petitioner/Appellant,**

v.

**Mark Howard WALL, Respondent/Appellee.**

Court of Appeals of Tennessee, Middle Section.

June 23, 1995.

Application for Permission to Appeal Denied by Supreme Court Sept. 18, 1995.

Frank J. Runyon, Clarksville, for Petition-er/Appellant.

Jack M. Rudolph, Clarksville, for Respon-dent/Appellee.

## *OPINION*

TODD, Presiding Judge, Middle Section.

In 1989, a Hawaii court entered a divorce decree granting custody of the three year old son of the parties to the father, Mark Howard Wall. In 1993, the mother, Brenda K. Wall (now Washburn) filed this suit in Montgomery County, Tennessee, seeking custody of the child (then 7 years old). In 1994, when the child was 8 years old, the Trial Court denied the change. The mother has appealed to this Court stating a single issue as follows:

> The Trial Court erred in denying Brenda Kay Washburn's petition for change of custody.

Appellant first argues that the custody order of the Hawaii court is an "agreed order" and therefore not as "conclusive" as it would be if custody had been adjudicated "in open court."

The order states simply:

(2) Plaintiff is awarded the care, custody and control of the minor child of the parties, subject to the defendant's rights of liberal visitation which include the right of defendant to have the minor child of the parties unless otherwise agreed by the parties spend two (2) months during the summer and alternate Christmas and Spring breaks from school with defendant.

Although the divorce decree does not so recite, both parties testified that the grant of

custody was made in conformity with their written agreement as to custody and property division.

In an unreported opinion relied upon by appellant, the custody of the minor child was committed to the plaintiff in conformity with a written custody and property settlement agreement which was incorporated into the decree. No such written agreement, or reference thereto is found in the decree included in this record.

Appellant next argues that the decision of the Trial Court (in the present case) was based upon a finding that the change of circumstances were not of a nature "so as to disadvantage the father of the child." The judgment of the Trial Court states:

> The Court considered the proof of both parents, of other witnesses, and the Court heard the subject child in chambers and found that the child very much wanted to go to Alabama, and make his home with his mother, Brenda K. Washburn, his half sister and his half brother. The Court finds that there were many benefits for placing the child in the custody of his mother; the child is an intelligent child, presented himself very well, clearly wanted the change of custody. The Court finds that the residence in Alabama, a rural residence, might be more comfortable and the surroundings might well be better than the surroundings will be on a new move for Mark Howard Wall to be located militarily in the State of Maryland. The Court does not find such a disadvantage change on the part of the child's father that custody should be removed from him and awarded to his former wife.

The finding of the Trial Court must be interpreted in the light of the evidence before him.

The date and place of the marriage of the parties do not appear in this record. However, it would appear that they married in 1984 or 1985. The wife had two children by a previous marriage who did not reside with the mother during the marriage to the defendant. The husband had no previous marriage or children. Shortly after marriage, the husband entered active duty in the U.S. Army, which duty continued to the date of trial. Their son, Greg, was born on April 6, 1986, while the parties were living in Huntsville, Alabama. Because of transfer of duty of the father, the parties moved to Indian Head, Maryland, and thereafter to Hawaii, where they were divorced on December 13, 1989. The decree vested custody in the father with liberal visitation to the mother. For a few months following the divorce, the parties continued to reside in the same quarters with the child. The mother was employed by the U.S. Government. The husband's duties required his frequent absence from Hawaii. After the mother moved to separate quarters, on March 8, 1990, without consulting the mother or the Hawaii Court, the father took Greg to the home of his parents in Plano, Texas, where Greg remained until May, 1993. In October, 1990, the mother returned to the home of her parents in Alabama where she obtained employment and remarried. While the child was at Plano, Texas, both parents visited him there.

On April 24, 1992, the District Court of Collin County, Texas, entered an order denying the mother's petition for change of custody. The Texas Court was informed by the father of his plans to bring the child to Tennessee and make a home for him in this State. On December 3, 1992, the same Court ordered a detailed schedule of visitation for the mother. In May, 1993, the father remarried and brought the child to Clarksville, Tennessee to reside with the father and his new wife. Subsequently, the father obtained better housing on the grounds of his duty station, Fort Campbell, Kentucky, near Clarksville.

October 4, 1993, the mother initiated the present action for change of custody alleging the following grounds:

1. From the very beginning, Petitioner was deceived, as was the minor child of the parties, by Respondent in that Gregory Wall was to live with Respondent. Gregory Wall, resided with his paternal grandparents, not his father.

2. Both parties have remarried, Petitioner being married to a man who has an engineering degree and a masters degree

in business. Petitioner and her husband reside in Hazelgreen, Alabama, she has two children who are extremely close to their half brother who is the subject of this Petition and the three children enjoy the company of one another and enjoy living together. Petitioner resides in a wonderful place of residence to wit: it is a new two thousand eight hundred (2,800) square foot house, split level, 4 bedrooms, 3 full baths, central heat and air, located on 9 acres with a creek running through the property, as opposed to living in an apartment. Petitioner's place of residence provides a great deal more stability than does the place of residence of her former husband.

3. The minor child of the parties is not happy when with his father and step-mother.

4. Respondent deceived the Court at the most recent hearing regarding the problems of the parties in that the Court was advised that Respondent was taking the child to live with him right away when in fact that did not take place for many months, Respondent having told the Court he would take the child in December of 1992, and he did not take the child until the last week of May, 1993, a few weeks after Petitioner filed the petition in this cause.

5. The minor child of the parties has now matured, wishes to live with Petitioner and his sister and brother and Petitioner's husband and the young man has made these desires clearly known.

6. The environment in which the child is living is not a good environment in that things are said and stated that are inappropriate to be said and stated in front of children.

7. The minor child of the parties is exposed to fights on the school bus, foul language and poor behavior from children in the neighborhood in which he now resides.

8. Respondent does not see after the personal health needs of his son, all of this to his detriment, and this since the remarriage of both parties.

9. Respondent's job requires him from time to time and on short notice to be away from his son for extended periods of time and this is not the case with Petitioner's situation.

In accordance with the prevailing practice of the Trial Court, the testimony of the parties was heard first, after which the mother presented her witnesses. After the witnesses for the mother were heard, and before presenting further evidence, the father moved for dismissal, and the Trial Court dismissed the mother's petition for change of custody. No testimony was presented by the father except his own.

The judgment of the Trial Court states:
... [T]he Motion made at the hearing on April 12, 1994, on behalf of Mark Howard Wall to overrule/dismiss the petition for change is sustained and the petition for a change of custody is dismissed.

Some of the grounds of the petition, quoted above, cannot be considered in this appeal because of the proceeding for change of custody filed in and disposed of by the Texas Court.

■ The doctrine of *res judicata* bars a second suit between the same parties on the same cause of action with respect to all issues which were or could have been brought in the former suit. *Massengill v. Scott,* Tenn.1987, 738 S.W.2d 629; *Stacks v. Saunders,* Tenn.App.1990, 812 S.W.2d 587.

■ Judgment in a former action concludes not only facts actually litigated, but facts which might have been litigated. *Gregory v. Gregory,* Tenn.App.1990, 803 S.W.2d 242.

■ Where misconduct is held to be insufficient change of circumstance to change custody, the same misconduct may, under proper circumstances, be added to subsequent conduct in order to accumulate an aggregate total of misconduct which could justify change of custody.

The Trial Court heard evidence that the father and his wife occupy an adequate two bedroom, 2,800 square foot home on the Fort Campbell Reservation; that the child has his own bedroom, two dogs and a rabbit; that he

is doing well in school, although he received a report showing "behavior problem"; that his father took him to a clinical psychologist who reported that the child had a "hostile attitude" (no details); and that the child gets along very well with his father's new wife.

The Court also heard evidence that the mother's Alabama home is commodious in a semi-rural setting with her other two children present, that the child got along well in the mother's home, did not get along with his step mother and preferred to live with his mother, who continues to be employed. The Court also heard of the father's impending transfer to Maryland and details of housing and school facilities there.

The Court also heard that the father occasionally entertained his "buddies" in the home, serving beer and that he had given his son a sip of beer. The mother admitted that she and her new husband imbibed occasionally.

There is evidence that the mother found Greg's toenails needed clipping and wax in his ears needed removal.

There is evidence that Greg was baptized in a church in Texas, but does not attend church regularly when with his father; and that he attends church regularly when he is with his mother.

There is evidence that the child wore a ring which could not be removed except by clipping it.

In the light of the foregoing, this Court interprets the above quoted finding of the Trial Judge to mean that he did not find that the manner in which the father had exercised custody of the child had resulted in any substantial disadvantage or injury to the child.

Appellant cites *Dantzler v. Dantzler*, Tenn. App.1985, 665 S.W.2d 385, wherein this Court affirmed the action of the Trial Court in changing custody from the father to the mother under the following circumstances: In 1980, the divorce decree placed custody in the mother. In 1982, custody was transferred to the father because another man was "enjoying bedroom privileges" in the home of the mother. Shortly thereafter, the mother married her paramour, and custody

was restored to her upon a finding of other circumstances including "a psychological change" in one of the children. On the contrary, in the present case, the Trial Judge has found "no disadvantage" (to the child) in leaving him in the custody of his father.

Appellant cites *Musselman v. Acuff*, Tenn. App.1991, 826 S.W.2d 920, wherein this Court reversed an order of the Trial Court changing custody of a child from his mother to his father. After discussing the advantages of living with the mother and new husband and the negative aspects of life with the father, this Court said:

In this case, the record establishes a consistent pattern of the mother's caring for her child. She obtained an injunction to protect herself and the child from the father's rages at the time of the divorce, enrolled Shane in high quality day care and in good public schools. At least three of her moves, which the Trial Judge criticized, were prompted by concern for her son's need: the move from Tennessee to Maryland, in part, to separate from her ex-husband's violence; the move from Maryland to California to reduce her out-of-town travel; and the move to a new apartment was to improve Shane's schooling. The family crisis that ensued when Hout left was met by counseling. The mother attempted, albeit unsuccessfully, to enforce the father's child support obligation in the face of his threats of the loss of her son if she attempted to collect the support. During this bitter custody dispute, she testified she encouraged Shane to call his father, and would encourage changing visitation to allow Shane to spend uninterrupted holiday periods with his father.

There is some evidence that the mother inappropriately bartered visitation for an arrearage payment on one occasion, and that Shane had been loosely supervised at play at infrequent intervals. However, the record fails to show any pattern of neglect or abuse that would support a custody change. The parties admit that Shane wants to live with his mother, the only parent he has ever really known, and the evidence clearly preponderates that the child has not been adversely impacted by

being in his mother's care and custody. He has made good grades in school, and a day-care worker found him to be a normal, well-adjusted child, with a satisfactory relationship with his new step-father. *Musselman,* 826 S.W.2d at 923.

Appellant complains of the father's leaving the child in the custody of his parents in Texas for over three years. There is no evidence that the child was harmed by this experience or that appellant sought relief from it until the latter part of the three years. Both parents visited the child in Texas, and he was undoubtedly better off in the stable location of his grandparents' home than with his father whose duties required his frequent absences from the home. Moreover, the judgment of the Texas Court precludes any consideration of the residence of the child with the Texas grandparents.

Appellant argues that the child is not compatible with the father's new wife, but the testimony is contradictory on this point.

Appellant relies upon the failure of the new wife of the father to testify, citing *Riddick v. Riddick,* Tenn.App.1973, 497 S.W.2d 740. However, in *Dantzler v. Dantzler, supra,* this Court held that the absence of the testimony of the new husband of the mother was not determinative. Moreover, the action of the Trial Court concluded the trial before the new wife of the father had an opportunity to testify. Appellant urges consideration of the opportunity of the child to associate with his mother's children by another marriage. Such opportunity is afforded by the liberal visitation of the child with his mother.

Appellant relies heavily upon the testimony of the child (then 8 years old) as to his preference. Such testimony "may be considered" but is not controlling.

Appellant argues that the recurrent moves are not for the best interest of the child. This circumstance invokes close scrutiny, but does not necessarily prevent the father from being a competent custodian, and it certainly is not a "change of circumstances," for it predated both the Hawaii decree and the Texas judgment.

Appellant asserts the superior religious influence in her home, which is a circumstance but not compelling or conclusive. *Neely v. Neely,* Tenn.App.1987, 737 S.W.2d 539.

Appellant cites the behavior and attitude problem which involves a single report card and a single hearsay quote from a psychologist, which are not sufficient to establish substantial disadvantage or injury to the child.

Appellant was "alarmed" by the "tight ring" episode, but no real harm to the child is shown.

When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child. *Contreras v. Ward,* Tenn.App.1991, 831 S.W.2d 288.

After hearing conflicting testimony and resolving issues of credibility, the Trial Judge has determined that continuance of the court-ordered custody will not substantially harm the child. The evidence does not preponderate against this conclusion, indeed it supports this conclusion.

The judgment of the Trial Court is affirmed. Costs of this appeal are assessed against the appellant. The cause is remanded to the Trial Court for any further procedures which may be necessary and proper.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.