IN THE COURT OF APPEALS OF TENNESSEE

FILED

July 22, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| DEBRA ANN EBERHART, | ) | C/A NO. 03A01-9612-CV-00374 |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | HAMILTON COUNTY CIRCUIT COURT |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| WILLIAM DANIEL EBERHART, | ) | |
| | ) | HONORABLE ROBERT M. SUMMITT, |
| Petitioner-Appellant. | ) | JUDGE |

For Appellant

LESLIE B. McWILLIAMS
Chattanooga, Tennessee

For Appellee

ROBERT J. BATSON, JR.
Chattanooga, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

In this post-divorce case, William Daniel Eberhart (Father) filed a petition seeking custody of his son, Daniel D. Eberhart, age 7. He seeks to modify the parties' judgment of divorce, which granted his former wife, Debra Ann Eberhart (Mother), sole custody of their child. Following a bench trial, the court denied Father's request and dismissed his petition. Father appealed, raising issues that present the following questions:

> 1. Does the evidence preponderate against the trial court's refusal to change custody of the subject child from Mother to Father?
>
> 2. Comparatively speaking, is Father a more appropriate custodian than Mother?
>
> 3. Does T.C.A. § 36-6-106[1] apply to a

---

[1]T.C.A. § 36-6-106 provides as follows:

> In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

modification of custody case?

4. Did the trial court improperly sustain the appellee's objections to certain of the appellant's questions on the ground that the questions were leading in nature?

We affirm.


I


The parties were divorced on January 26, 1995. In the judgment of divorce, the trial court approved and incorporated, by reference, the parties' marital dissolution agreement, executed by them in July, 1994. The parties' agreement "awarded [Mother] the custody of the parties' minor child, Daniel Dewayne[2] Eberhart."

On March 19, 1996, a few days short of 14 months following the entry of the judgment of divorce, Father filed his petition seeking to change custody. It was and is his contention that a change of custody is warranted because (1) the child is left in the care of his maternal grandfather and others for substantial periods of time; (2) Mother is not involved in the "daily care needs of son"; (3) Mother does not provide adequate, stable housing for the child; and (4) Mother is financially irresponsible. Father also relies upon the fact that he spends a

_____

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

[2]At other places in the record, the child's middle name is spelled "Dwain."

3

substantial amount of time with his son and is in a position to afford him a good, stable environment.

The trial court, in denying Father's request for change of custody, found that he had failed to carry his burden of proving a substantial and material change of circumstances warranting a change of custody, noting that the child is "an All-American kid, fine example, so somebody's done something right."

Our review is de novo; however, the record comes to us accompanied by a presumption of correctness, which we must honor unless the evidence preponderates against the trial court's findings. Rule 13(d), T.R.A.P. **Union Carbide Corporation v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are not afforded the same deference. **Adams v. Dean Roofing Co, Inc.**, 715 S.W.2d 341, 343 (Tenn.App. 1986). Furthermore, a trial court, "on an issue which hinges on witness credibility, will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary" of the court's judgment. **Tennessee Valley Kaolin Corp. v. Perry**, 526 S.W.2d 488, 490 (Tenn.App. 1974).

II

As the appellant correctly points out, a judgment or order awarding custody is res judicata as to the facts in existence at the time of the award. **Long v. Long**, 488 S.W.2d 729, 731-32 (Tenn.App. 1972); **Walker v. Walker**, 656 S.W.2d 11, 16

4

(Tenn.App. 1983); *Arnold v. Gouvitsa,* 735 S.W.2d 458, 462 (Tenn.App. 1987). "[S]uch decree shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require." T.C.A. § 36-6-101.

It is clear that not every change in the circumstances of the parties and/or their child is sufficient to warrant a modification of a custody decree. "[I]n a modification proceeding, the trial judge must find a material change in circumstances that is *compelling enough* to warrant the dramatic remedy of changed custody." *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn.App. 1991). (Emphasis added).

In *Musselman,* we quoted the following from a decision of the Mississippi Supreme Court:

> "Furthermore, it was manifest error to hold that the facts and circumstances of this case supported a modification of this child's custody. It must be recognized that uprooting a child from his mother, school and environment was a jolting, traumatic experience. It is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody. This case [does] not remotely reach any such proportion."

*Id*. at 923 (quoting from *Ballard v. Ballard*, 434 So.2d 1357, 1360 (Miss. 1983)).

5

Particularly apropos to the facts of this case is our statement in the case of **Wall v. Wall**, 907 S.W.2d, 829 (Tenn.App. 1995):

> When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child. **Contreras v. Ward**, Tenn.App. 1991, 831 S.W.2d 288.

*Id*. at 834.

III

The evidence does not preponderate against the trial court's determination that the facts and circumstances relied upon by Father do not constitute a sufficient change in the circumstances of the parties and their child "to warrant the dramatic remedy of changed custody." *See* **Musselman**, 826 S.W.2d at 922. There are two basic reasons for this. First, much of what Father contends are "changed circumstances" are actually facts and conditions that existed at the time of the divorce. Mother's living arrangements is a good example of this. She sold

6

the former marital residence prior to the divorce.[3]  When the divorce was granted, Mother and the parties' child had already taken up residence in quarters which would later be harshly criticized by Father as being too crowded.  Mother's child care needs is still another example of information that was known to Father at the time of the divorce.  Mother was then working full-time.  Father had to know that her employment would, by necessity, require the involvement of others in the care of the child.  All of this was a part of the factual scenario that existed in January, 1995, when the court dissolved the parties' marriage.  By definition, a condition that existed at the time of the divorce and was known to Father or should have been obvious to him because of facts that were clearly known to him at that time cannot be considered "changed circumstances."  It is obvious that two of Father's main complaints--cramped quarters and the involvement of the maternal grandfather--were very much a part of the factual scenario in existence when this marriage was dissolved.

The other reason that Father cannot successfuly rely upon the circumstances of which he complains is that there is no proof that the child has been harmed or might be harmed by Mother's living arrangements, or the significant involvement of the maternal grandfather in his care.  The same can also be said about Father's other complaints--an absence of toys where the child is residing with the Mother, her multiple abodes, and Mother's alleged financial irresponsibility.  There is nothing to

---

[3]Mother was required to sell the marital residence by the terms of the marital dissolution agreement.  That document provides that "[Mother] agrees to immediately place the home for sale."

7

show that any conduct on the part of Mother "clearly posits or causes danger to the mental or emotional well-being of [her] child." *See* **Musselman**, 826 S.W.2d at 923. Clearly, there is no showing of "substantial harm to the child." *See* **Wall**, 907 S.W.2d at 834. On the contrary, the proof shows that the child is in good health, is an "excellent student," gets along well with other children, and is otherwise a very normal child in all respects.

It is clear that Father very much regrets agreeing to the award of custody to Mother. It is likewise clear that Father very much cares for his son and has continued an excellent relationship with him. As the trial court noted, "I don't have any evidence that he's not a good man." There is nothing to suggest that Father would not be a proper custodian; but as the **Musselman** case points out, in a modification case, the trial court "need not repeat the comparative fitness analysis that is appropriate at the time of the original custody decree." *Id*. at 922.

We agree with the appellant that T.C.A. § 36-6-106 is applicable to a modification of custody case just as it is to an original award of custody; however, in a modification case, the statute does not come into play unless and until there has been a showing of a material and substantial change of circumstances as described in **Musselman**. Until the requisite change of circumstances has been shown, the court does not move to "a custody determination." *See* T.C.A. § 36-6-106. There is nothing in our law to suggest that a "change of circumstances

8

determination" is the same as a "custody determination" under the statute. We certainly do not interpret T.C.A. § 36-6-106 to mean that in a modification case, a court is free to do a comparative analysis of the parties' fitness as custodians regardless of whether there is a change of circumstances. *Musselman, Wall* and other cases teach otherwise. The statute does not purport to change this case authority.

We find that the first three issues raised by Father do not compel a reversal of the trial court's order.

IV

Father also complains that the trial judge was in error when he sustained several evidentiary objections by Mother on the ground of leading. We do not find that any of the challenged questions were leading in the context in which they were asked. *See* Cohen, Sheppeard and Paine, *Tennessee Law of Evidence* § 611.6 (3d ed. 1995). In none of the questions at issue does the questioner suggest the answer to the inquiry. In fact, one of the questions had not been completed when the objection was made.[4] Up to that point, counsel had only posed a point of reference. With respect to the other two questions, the witness received no suggestion in the question as to how he should answer the question. The court was in error in sustaining Mother's objections; however, this error does not provide a basis for a reversal of the judgment in this case. This is because the

---

[4]The question was: "In July, 1994 when you signed the marital dissolution agreement --"

challenged questions were either rephrased and answered or the information sought to be elicited was placed in the record in some other fashion. In any event, the trial court's rulings do not amount to "error[s] involving a substantial right [that] more probably than not affected the judgment or would result in prejudice to the judicial process." *See* Rule 36(b), T.R.A.P. Father's final issue is found to be without merit.

The judgment of the trial court is affirmed. Costs on appeal are taxed against the appellant and his surety. This cause is remanded to the trial court for the collection of costs assessed below, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.