# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

CINDY L. STUBBS,                                 )
                                                 )
                    Plaintiff/Appellee,          )   Obion Chancery No. 18-737
                                                 )
VS.                                              )   Appeal No. 02A01-9703-CH-00050
                                                 )
WOODROW W. STUBBS, III,                          )
                                                 )
                    Defendant/Appellant.         )

FILED

November 24, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF OBION COUNTY
AT UNION CITY, TENNESSEE
THE HONORABLE WILLIAM MICHAEL MALOAN, CHANCELLOR

**STEPHEN C. CROFFORD**
Nashville, Tennessee
Attorney for Appellant


**BRUCE MOSS**
**CONLEY CAMPBELL MOSS SMITH**
Union City, Tennessee
Attorney for Appellee

**AFFIRMED AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Plaintiff, Woodrow Wilson Stubbs III ("Father"), appeals the trial court's order in

favor of Cindy Stubbs ("Mother") dismissing his petition to change custody. For reasons hereinafter stated, we affirm the trial court's judgment and remand to the trial court for a determination of the amount of attorney's fees to award Mother as necessitated by this appeal.

**FACTS**

On September 3, 1996, Father filed a petition to change custody and a temporary restraining order. Thereafter, on September 17, 1996, Mother filed a response to the petition. This cause came to trial on September 24, 1996, in which, the trial court rescinded the temporary restraining order and dismissed Father's petition to change custody.

Mother and Father were married in July, 1990 and were cohabitating in Florida as of February 1994. There are two children of the marriage--Cody, age 5, and Savannah, age 3. Mother and the two children moved to Union City, Tennessee, in February 1994. Mother filed for divorce in April 1995. The final decree of divorce was granted December 21, 1995. Mother was granted custody of the children by virtue of a Marital Dissolution Agreement. Father remained in Florida.

On August 10,1996, Mother contacted Father by placing a call to Father's fiancé, Robin Beach ( "Beach") Mother asked Beach if Father would come get the children and enroll them in school. There is some dispute as to when and if the children were to be returned. Mother contends that she told Father and Beach that the children's stay would be for two weeks or a month at the most. Beach contends that Mother made no mention of the length of the stay. Beach further asserts that Mother stated that she wanted the children to live with Father for a while. Thereafter, Father drove to Tennessee to pick up the children. Subsequently, Father sought to have custody of the children changed from Mother to himself.

2

During this time frame, Mother was seeing a psychiatrist for problems with bulimia and depression. Mother was taking various prescribed medications from various doctors such as hydrocodone, depakote, prozac, diazepam, and butalbital/APAP/Caffeine. Father contends the medication has affected Mother's ability to take care of the children. Mother admitted that a certain medication, depakote, was making her sleep but, otherwise, denies that her medication interferes with her ability to care for the children in any way. Mother testified that she discontinued her usage of depakote.

Father tendered various depositions and witnesses to establish that Mother was not properly taking care of the children. Father's sister and brother-in-law testified, via deposition, that, on one occasion while they were picking up the children for a visit, Mother was "high," "groggy," and "stumbling." Father's sister stated that the children were physically dirty, and that Cody was wearing cowboy boots with no socks and had terrible blisters on his feet. Moreover, she stated that there were no shoes in Mother's house for Savannah. Father's mother testified that she had visited several times in the home of Mother and that it was unkept and in want of food. Father's father testified that sometimes Mother's house was clean and other times it was not.

Several witnesses testified on Mother's behalf. The Central Elementary School Principal, Joyce Stephens, testified through stipulated trial exhibit that Mother enrolled Cody in kindergarten on March 5, 1996, attended registration night on August 19, 1996, and attended parent night on August 29, 1996. Furthermore, Ms. Stephens was told by Mother that Cody would return to Tennessee and be in school on September 16, 1996.

Nadine Lyons, Mother's mother, testified that she had seen the children three to four times per week and witnessed no deficiencies in the care that Mother was giving to the children. Ms. Lyons stated that the children had ample food and clothing and that Mother was able to take care of them.

Vicky Delassus, a friend of Mother's for eighteen years who recently moved back

to Union City, testified that she had been around Mother several times over the last few months preceding this cause and that the children were well-behaved, well-nourished, and clean. Ms. Delassus stated that the house was not dirty, the floors were clean, and the beds were made.

Susan McManus, a friend and former babysitter, testified that she has been around Mother and the children weekly for the last two years and that the children were full of energy, playful, well-behaved, lovable, and wonderful. She further stated that the children never seemed undernourished or inadequately clothed.

Annette Voker, a friend of Mother's for thirteen years, testified that she had seen Mother and the children once a week for the last year preceding this cause. She described the children as well taken care of, happy, normal, typical children. She stated that the children's clothing was adequate and the home not filthy or strewn.

The trial court found that there was no firm agreement as to the children going to Florida to live or visit. Further, the trial court found that there was not sufficient evidence to warrant a change in custody. Specifically, the trial court found that Father knew what Mother was like, and agreed at the time of the divorce that Mother was to have custody of the children. The trial court stated that Mother's present situation, while not commendable, was nothing that was unforeseeable or that did not exist at the time of the divorce. Because of the above findings, the trial court rescinded the temporary restraining order and dismissed Father's petition for change of custody. This appeal ensued.

## LAW AND DISCUSSION

The paramount consideration in a custody proceeding is the best interest of the child. When a petition to change custody is brought before the trial court, custody should not be altered for the well-being or gratification of the either parent or to castigate either

4

parent, but to foster and preserve the welfare of the child(ren). A change in custody is only warranted where continuation of the adjudicated custody would pose substantial harm to the child(ren). As in all non-jury cases, a trial court's determination of what circumstances warrant a grant or denial of a petition to change custody is reviewed by us *de novo*; however, the record developed below comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the findings of fact supporting the trial court's judgment. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). In making our *de novo* review, we do not pass on the credibility of witnesses. *Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991). Credibility is an issue for the trial court who saw and heard the witnesses testify and is, therefore, in the premier position to determine credibility. *Id.*

In order to justify a change in a custodial arrangement, there must be "such a change in circumstances as will directly affect the welfare of the minor." *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981). The decision of the trial court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995). Custody is not changed because one parent can furnish a more suitable or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child. *Id.* This Court in *Musselman v. Acuff*, 826 S.W.2d 920, 923 (Tenn. Ct. App. 1991) quoted the Mississippi Supreme Court which provided:

> It must be recognized that uprooting a child from his mother, school and environment was a jolting, traumatic experience. It is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody.

Essential to Father's petition, although certainly not the only basis, was Mother's psychiatric difficulties and her alleged abuse of medication. Father relied heavily on the testimony of Cynthia Hodges and Howard Schwartz, Father's sister and brother-in-law, and upon the prescription records of Mother. Ms. Hodges and Mr. Schwartz testimony was

5

received by the trial court in the form of depositions taken on September 11, 1996. These depositions were primarily concerned with Mother's mental state and the children's physical conditions when Ms. Hodges and Mr. Schwartz went to pick up the children for a visit in August of 1996. The evidence rendered from these two depositions was acutely disputed by evidence propounded by Mother. The testimony of Ms. Hodges and Mr. Schwartz was circumstantial in nature and, clearly, did not impress the trial court sufficiently to merit a change in custody.

Also essential to Father's petition is his assertion that Mother requested that the children live with Father's family in Florida because Mother was experiencing difficulty in properly caring for the children. We find the record devoid of such evidence. What the evidence does show is that there was no absolute agreement between Father and Mother as to whether the children's stay in Florida was merely a visit or a change in custody. The evidence from Father and Mother are adverse to each other on this point. The trial court heard testimony on this point and found that the parties had not come to a "firm agreement." We agree.

We have carefully reviewed the evidence in this case. The burden to prove a change in circumstances resulting in a substantial harm to the child(ren) is upon the non-custodial parent. The testimony and depositions tending to support Father's petition for change of custody were sharply disputed by the testimony of Mother and the witnesses presented on her behalf. These conflicts not only required the trial court to evaluate the credibility of the witnesses who appeared before it at trial or in the form of depositions but also to determine whether or not Father carried his burden of proof. The trial court resolved these issues in favor of Mother. We cannot say that the trial court was wrong in its assessment of the witnesses' credibility. As we have previously indicated, credibility of the various witnesses is for the trial court to determine.

As mentioned above, the decision of the trial court is not changeable unless a change in circumstances occurs sufficient to cause substantial harm to the children. After

a careful examination of the record, we find that Father failed to carry his burden of proof in establishing a change in circumstances which would threaten substantial harm to the children. Considering the importance of credibility in this cause, we cannot say that the evidence preponderates against the trial court's findings of fact supporting its conclusion that there had not been a sufficient change in circumstances to justify a change in custody. We therefore affirm the judgment of the trial court.

Concerning attorney fees requested by Mother, T.C.A. § 36-5-103(c) governs awards of attorney fees in proceedings relating to child custody. This statute provides that a spouse may recover reasonable attorney fees incurred in any action concerning the adjudication of the custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing before whom such action or proceeding is pending, in the discretion of such court.

In the instant case, Father has instigated actions both at the trial and appellate levels. Father's petition to change custody has proven unsuccessful both at trial and on this appeal. As a result, Father has necessitated Mother's attorney's fees. It is within our discretion to grant or deny Mother's request for attorney's fees necessitated by this appeal. We find that an award of attorney's fees necessitated by this appeal is just and equitable. We remand this issue to the trial court to determine the amount of attorney's fees to award Mother. In making this determination, we emphasize that the award is only for attorney's fees necessitated by this appeal.

In light of the foregoing analysis, we hereby affirm the judgment of the trial court and remand to the trial court to determine the amount of attorney's fees to which Mother is entitled on appeal. Costs of appeal are taxed to the appellant, for which execution may issue if necessary.

                                                      _____

HIGHERS, J.

7

CONCUR:

_____

CRAWFORD, P.J., W.S.

_____

FARMER, J.