IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

March 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

CLAYTON TILTON CROWELL,                    )        M1999-00505-COA-R3-CV
                                           )
        Plaintiff/Appellee                 )        Appeal As Of Right From The
                                           )        HUMPHREYS COUNTY
vs.                                        )        JUVENILE COURT
                                           )
KATHY BIGALOW BANKA BROWN,                 )        HON. ANTHONY L. SANDERS
                                           )        JUDGE
        Defendant/Appellant                )

**For The Appellant:**                              **For The Appellee:**
Mark Runyon Gill                                    Dan R. Bradley
P. O. Box 445                                       120 West Court Square
Erin, Tennessee 37061                               Waverly, Tennessee 37185

REVERSED and REMANDED                                                Swiney, J.

# O P I N I O N

        Mother appeals the Trial Court's change of custody of the parties' nine-year-old daughter from Mother to Father. Mother argues that the only change of circumstance shown at trial was the fact that Father "had a home, had remarried and was ready to be a father now." For the reasons herein stated, we reverse the Judgment of the Trial Court and remand this case to the Trial Court for further proceedings consistent with this Opinion.

## BACKGROUND

        Kayla Marie Crowell, whose custody is at issue in this case, was born on May 30, 1991, when Kathy Bigalow Banks Brown ("Mother") was 15 years old. Mother and Clayton Tilton Crowell ("Father") were never married. Mother was a minor in the custody of the Tennessee Department of Human Services (DHS) on April 9, 1992, when the Trial Court held a hearing to decide the issue of custody of Kayla. Mother and Kayla were living with Father's parents. The

1

Court directed DHS to conduct a home study in the home of Ronnie and Betty Sue Crowell (Father's parents) and provide that home study to Kayla's Guardian Ad Litem. The Court also stated that it would be beneficial for a psychological evaluation to be performed on Clayton Crowell, and continued the case until May 21, 1992. The Court found:

> The best interest of the minor child dictate that legal and physical custody of Kayla Marie Crowell and of Kathy Sue Bigelow be left with the Tennessee Department of Human Services.

On May 21, 1992, the Trial Court conducted another hearing. It appears that Mother and Kayla had moved out of the paternal grandparents' home by that time. Mother, Father, the paternal grandparents and DHS representatives were present. The Trial Court ordered:

> legal and physical custody of Kayla Marie Crowell shall remain with the Department of Human Services. During the remainder of the 1991-1992 school year, Kayla will be cared for by Mr. and Mrs. Ronnie Crowell, her paternal grandparents, from 7:30 AM until 4:30 PM Monday through Friday.... At the conclusion of the 1991-1992 school year, Kayla will be with Mr. and Mrs. Ronnie Crowell from 7:30 AM to 2:30 PM Monday through Friday ....

The Trial Court also ordered that Mother and Father were each entitled to one week's uninterrupted visitation with Kayla for summer vacation. The matter was set for review in September 1992. Paternity proceedings in Humphreys County on July 9, 1992 resulted in Clayton Crowell being adjudicated Kayla's father. The record before us contains no information about any follow-up hearing in September 1992.

Father joined the U. S. Army and was stationed at Fort Hood, Texas. He married on May 2, 1995. The paternal grandparents filed a petition for custody of Kayla some time before June 15, 1995. The Trial Court held a hearing on June 15, 1995 and declined to award custody to the paternal grandparents but awarded them regular week-end visitation. The Court also stated that Father was scheduled to have [military] leave and awarded him visitation from July 16, 1995 until August 3, 1995 to coincide with his leave.

On February 22, 1996, DHS was relieved of custody of Mother by Order of the Trial Court. That Order directed that Kayla remain in the custody of DHS.

On July 25, 1996, the Trial Court held a hearing on petitions for custody of Kayla filed by both Mother and Father. The Trial Court found "that the petitions are premature," and ordered:

> the requests of both parents to be awarded custody of the minor child, Kayla Crowell, are respectfully denied, and custody shall remain vested with the Tennessee Department of Human Services with

2

physical placement remaining with Kathy Bigalow. Clayton Crowell shall have visitation with the minor child on the first, third and fifth weekends of every month from Friday at 6:00 p.m. until Sunday at 6:00 p.m. . . . .

Father returned to his hometown in Humphreys County from his three-year tour of military service in September, 1996. He began working at Wabash Alloys and lived with his parents for some time while establishing a financial condition that would enable him to buy a home. On January 1, 1997, he and his wife bought a new home in McEwen, Tennessee and moved there.

A second daughter, Isabella, was born to Mother on October 25, 1996. Five months later, on March 31, 1997, Mother entered into her first marriage, to the father of Isabella. At that time, both Mother and Isabella's father were students at Austin Peay State University and lived in on-campus housing. Mother made several moves to different apartments in campus housing and then moved again to accompany her husband. Kayla made each of these moves with Mother. On April 3, 1997, three days after Mother married her first husband, the case was again heard by the Trial Court, upon a Motion for Review filed by Father. The Trial Court found:

> It appearing to the Court from the testimony of the parties, and witnesses, evidenced [sic] present and the record in this matter that the animosity which has previously existed between the parties is lessening. Further, it appears that the Father, Clayton Crowell, has made significant headway and has presented himself to the Court as a stable, loving parent. However, the minor child has been with the Mother, Kathy Bigalow Banka since birth and presently is thriving and doing well in school and the Court feels, based on the evidence before it, that the child should remain with the Mother and be placed in hr [sic] custody and it is therefore;
>
> ORDERED, ADJUDGED AND DECREED that Kathy Bigalow Banka is hereby awarded custody of the minor child, Kayla Crowell, and the Father, Clayton Crowell, is awarded liberal visitation privileges as specified in the Court's previous Order.
>
> IT IS ORDERED, ADJUDGED AND DECREED that the Department of Childrens' Services shall monitor this matter only on an as needed basis.

One year later, on March 31, 1998, Mother divorced Isabella's father and gave physical custody of Isabella to that child's father, who moved with that child to Tallahassee, Florida. Five months later, on September 10, 1998, Mother entered into her second marriage. In early 1999, her second husband, who was in the military service, moved to Germany. Mother agreed to move to Germany with Kayla, and her second husband shipped his belongings and Mother's furniture to Germany. In February 1999, when Father learned that Mother was planning to move to Germany

3

and take Kayla, he filed this petition for change of custody. During the pendency of this case, Kayla went to stay with Father in June, 1999, when she got out of school for the year, apparently pursuant to the regular visitation schedule. Mother left for Indianapolis, Indiana, to visit with her family. She went to work as a waitress at a Red Lobster restaurant in Indianapolis and testified that she earned $1,600 that month, including tips. She then decided that she would not move to Germany, but rather would divorce her second husband "as soon as I'm able to," and move with *her* mother and Kayla to Tallahassee, Florida, where her second daughter was living with that child's father. At the time of trial, on June 29, 1999, Red Lobster had offered to transfer Mother to its restaurant in Tallahassee and she had the promise of an apartment where she, her mother, and Kayla would live. She planned to pack her belongings, and those of Kayla and her mother, into a U-Haul trailer on August 1st, pick up her mother from the women's shelter where the mother stayed and worked as a counselor, and drive to Tallahassee to begin her new job.

The Trial Court changed custody of Kayla from Mother to Father after the June 29, 1999 hearing. We recite the Court's holding from the bench:

> And the Court remembers giving Ms. Brown custody of this child several years ago. And I think probably, at that time, I made the comment to the effect that they would probably wind up basically raising each other.
>
> And the thing that bothers the Court is this: The Court believes and finds that at sixteen years old, or seventeen, this young lady was more stable than she is today. Stability is a big item in a child's life. Everybody knows you're going to make some moves when you go to college. I mean, you know, that's part of the college life. But what we have here is much more than that. You know, she's moved around quite a bit, physically. She has not matured to the point, either, of appreciating the effect of moves and choices that you make in life on the child. If she divorces this one and finds another one and they're stable and happy, that's fine. But, you know, when you go to making choices, they adversely affect the child if they're – and her choices and living arrangements and men and the effect it's had on the child also goes to stability.
>
> *   *   *
>
> The bottom line in all this is, she plans to do better. As I often say sometimes with young people, we've got a "gonna." "I'm gonna do better; I'm gonna get a job, and I'm gonna get stable; I'm gonna do this and I'm gonna do that." Meanwhile, the child increases in age.
>
> The child seems to be doing fairly well. Based on what I've heard, this is a loving child, an intelligent, adjustable child. But, you know, when you look at a child like this and think that if they had the stability, if they had the continuity in their education, what would their skill level really be . . .

4

And looking at this whole situation – sometimes you have to take the totality of circumstances – the child has exhibited some unusual tendencies at such an age, you know, eight years old, Winnie the Pooh or Tigger or some cartoon-character type clothes would seem more appropriate.

Then we'll go back to stability and maturity. You know, some people exposed to this young lady's situation mature quickly. Others, kind of, even at twenty-two, twenty-three, with children, revisit their teen years. And I think that's where we are with the maturity. The Court's mainly concerned about lack of stability.

And the Court's going to change custody. I'm going to award the young man custody of the child.

Mother appeals, and raises the sole issue of whether the Trial Court erred in changing custody from Mother to Father. She argues that once custody has been determined, that is conclusive unless there are changed circumstances requiring a change in custody. Father raises the issue of whether this appeal is frivolous.

### DISCUSSION

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Davis v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293 (Tenn. 1997).

In this case, we do not have the customary situation in which an original custody award was made by a Trial Court upon the occasion of a divorce between Mother and Father. Mother was never married to Father. The child was in the custody of DHS from birth, and the Trial Court declined to award custody to either parent when the case was heard on July 25, 1996, finding that both petitions for custody were "premature." The Trial Court did state in that Order that "custody shall remain vested with the Tennessee Department of Human Services with physical placement remaining with Kathy Bigalow." Then, in April 1997, upon Motion for Review filed by Father, and after a hearing in which Mother, Father and the Department of Human Services participated, the Trial Court transferred custody from the Department of Human Services to Mother. Father was awarded "liberal visitation as specified in the Court's previous Order." There was no appeal of this decision transferring custody from the Department of Human Services to Mother.

A custody determination by a Trial Court as between competing parents "shall be

made upon the basis of the best interest of the child." T.C.A. § 36-6-106. The factors the Trial Court must consider are specifically set forth in that statute, and the Trial Court "shall consider all relevant factors." Once custody is awarded to a parent by application of those statutory factors, custody cannot be changed from one parent to the other in the absence of a showing by the non-custodial parent of new facts or "changed circumstances" justifying an alteration of the original custody award. *Musselman v. Acuff,* 826 S.W.2d 920, 924 (Tenn. Ct. App. 1991).

This Court has encouraged the stability of children's surroundings by holding that in order for a change in circumstances to warrant a change of custody, the change must be *necessary to prevent substantial harm to the child. Wall v. Wall,* 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995)[emphasis added]. The type of behavior required by the custodial parent which would precipitate a change of custody must be that "which clearly posits or causes danger to the mental or emotional well-being of a child . . . ." *Musselman,* 826 S.W.2d at 924. Similarly, "[c]ustody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child." *Wall,* 907 S.W. 2d at 834, quoting *Contreras v. Ward,* 831 S.W.2d 288 (Tenn. Ct. App. 1991).

The record in this case shows that the Trial Court heard both parents on April 3, 1997 and determined:

> the minor child has been with the Mother, Kathy Bigalow Banka
> since birth and presently is thriving and doing well in school and the
> Court feels, based on the evidence before it, that the child should
> remain with the Mother and be placed in hr [sic] custody....

The Trial Court changed custody from Mother to Father on June 29, 1999 without finding that the change was "necessary to prevent substantial harm to the child" as required by *Wall,* 907 S.W.2d at 834. Nor did the Trial Court find behavior by the Mother "which clearly posits or causes danger to the mental or emotional well-being of the child . . . ." as required by *Musselman,* 826 S.W.2d at 924. Kayla has been in Mother's physical custody since birth. The Trial Court made a determination in 1997 that Mother was the proper person, over the petition of Father, to have custody of Kayla.

The Trial Court's decision to change custody from Mother to Father was based not upon a finding that such a change was necessary to prevent substantial harm to Kayla, but apparently because the Trial Court felt Kayla would do better with Father. The Trial Court specifically found

6

that Kayla was a "loving child, intelligent child, adjustable child. But, you know, when you look at a child like this and think if they had the stability, if they had the continuity in their education, what would there skill level really be . . .." There was no finding by the Trial Court of "changed circumstances" sufficient to justify a change of custody. From our review of the record, we find the evidence preponderates in favor of there being no "change of circumstances" sufficient to justify this change of custody. Therefore, we hold the Trial Court committed reversible error by changing custody of Kayla from Mother to Father.

## CONCLUSION

For the foregoing reasons, the Judgment of the Trial Court is reversed and the custody of Kayla Marie Crowell is reinstated to Mother. The case is remanded to the Trial Court for further proceedings, if necessary, consistent with this opinion and for the parties' compliance with the requirements of T.C.A. § 36-6-108, Parent relocation, if applicable. Costs of this appeal are assessed to Clayton Tilton Crowell.

_____
D. MICHAEL SWINEY, J.

**CONCUR:**

_____
HOUSTON M. GODDARD, P.J.

_____
HERSCHEL P. FRANKS, J.

7