IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 6, 2002 Session

## TERESA LYNN (MACKIE) SCALES v. KENNETH ALLAN MACKIE

**Direct Appeal from the Chancery Court for Robertson County**
**No. 13682; The Honorable Carol Catalano, Chancellor**

———————————

**No. M2001-03161-COA-R3-CV - Filed January 7, 2003**

———————————

This appeal arises from the denial of a petition to modify visitation with a minor child. The trial court denied the father's petition, finding that the father failed to show that as a result of a material change in circumstance, his daughter had been harmed or was at risk of substantial harm due to the existing visitation arrangement. The primary issue on appeal is whether the trial court applied the correct legal standard in dismissing the father's petition. For the following reasons, we reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Louise R. Fontecchio, Nashville, TN, for Appellant

Charlotte U. Fleming, Angela Childress, Nashville, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Kenneth Mackie ("Mr. Mackie") and Teresa (Mackie) Scales ("Ms. Scales") were granted a divorce in 1999. At the time of the divorce, sole and exclusive custody of the parties' minor daughter was given to Ms. Scales. The chancellor, finding that Mr. Mackie posed a "substantial risk of both physical and emotional harm" to his daughter, prohibited him from any in-person visitation with her.

Despite being denied in-person visitation with his daughter, Mr. Mackie has been allowed to maintain phone contact with her. On average, Mr. Mackie speaks with his daughter two times per

week for approximately thirty minutes. Mr. Mackie claims that his daughter is very relaxed on the phone and that she is able to share her feelings and activities with him.

Mr. Mackie acknowledges that there were "serious problems" at the time of the divorce and does not take issue with the 1999 decision. Since the divorce, however, Mr. Mackie has received in-patient drug and alcohol treatment and claims to be sober and drug free. Mr. Mackie has also been consistent in paying $411 per month in child support and in maintaining medical insurance on his daughter. Believing that he has greatly improved his circumstances, Mr. Mackie filed a Petition to Modify Custody and Visitation on November 15, 2000. Mr. Mackie later modified this original petition to seek only a modification of visitation.

At trial, the lower court directed that the evidence be presented in two phases. During the first phase, Mr. Mackie was to present evidence that, as a result of a material change of circumstance, his daughter had been harmed or is at a substantial risk of harm because of the current visitation arrangement. If the first threshold was met, then Mr. Mackie was to offer proof that he had the ability to meet the needs of his daughter.

At the conclusion of the first phase of proof, the lower court found that Mr. Mackie failed to show that, as a result of a material change of circumstance, his daughter had been harmed or was at risk of substantial harm due to the existing visitation arrangement. Because Mr. Mackie did not satisfy the first threshold, the lower court did not accept proof regarding the parental fitness or stability of Mr. Mackie. The lower court dismissed the Petition to Modify Visitation on November 21, 2001, finding that the "[f]ather had failed to cross the threshold to provide the Court with evidence that either [sic] has been harmed or is at risk of substantial harm in her custody." Mr. Mackie timely filed this appeal on December 18, 2001.

As a result of the circumstances preceeding the divorce, Mr. Mackie has not seen his daughter since May of 1998. Claiming that there is no longer any reason to deny visitation, Mr. Mackie asks this Court to reverse the trial court's denial of visitation and remand so that the trial court may establish visitation between father and daughter.

### Issues

The parties raise the following issues for our review:

1.      Whether the trial court applied the correct legal standard in deciding whether to allow a parent to begin exercising in-person visitation with his or her minor child when visitation has previously been denied by the trial court at the time of the divorce.

2.      Whether the trial court erred in refusing to allow Mr. Mackie the opportunity to introduce evidence of a material change in his circumstance.

3. Whether the trial court's refusal to reinstate in-person visitation between parent and child was an unconstitutional termination of parental rights.

**Standard of Review**

We review the trial court's conclusions of law "'under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts.'" Kendrick v. Shoemake, No. E2000-01318-SC-R11-CV, 2002 Tenn. LEXIS 489, at \*6 (Tenn. Nov. 1, 2002) (citing S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001). With respect to the trial court's findings of fact, our review is *de novo* upon the trial court's record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). When the trial court does not make specific findings of fact, we must conduct a review of the record to determine where the preponderance of the evidence lies. Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997) (citing Kemp v. Thurmond, 521 S.W.2d 806, 808 (Tenn. 1975)).

**Law and Analysis**

The primary issue in this case concerns the proper standard to be applied when considering a petition to modify visitation with a minor child where in-person visitation was initially denied. This Court has previously recognized that the standard used in determining whether to modify an existing visitation arrangement is the same standard used when considering a petition to modify an existing custody determination. See Solima v. Solima, 7 S.W.3d 30, 32-33 (Tenn. Ct. App. 1998); see also DuBois v. DuBois, No. M1999-00330-COA-R3-CV, 2001 Tenn. App. LEXIS 274, at \*16-17 (Tenn. Ct. App. Apr. 10, 2000) (citations omitted).

A trial court's decision regarding custody and visitation, "once made and implemented, is res judicata upon the facts in existence or reasonably foreseeable when the decision is made." DuBois, 2001 Tenn. App. LEXIS 274, at \*16-17 (citations omitted). Such decisions may be modified, however, where "material changes in the child's circumstances require modifying an existing custody or visitation arrangement." Solima, 7 S.W.3d at 32.

"There are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody or visitation arrangement." Id. at 32 (citing Dantzler v. Dantzler, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983)). Courts will not interfere with an existing custody or visitation arrangement unless the party seeking the modification can prove there has been a material change in the child's circumstances that could not have been reasonably foreseen when the original custody or visitation decision was made and that it is in the child's best interests to change the existing custody or visitation arrangement. Id. at 32-33 (citations omitted); see also DuBois, 2001 Tenn. App. LEXIS 274, at \*17 (citations omitted).

Mr. Mackie argues that the trial court did not apply the correct legal standard and asks this Court what legal standard must be met to allow a parent to exercise in-person visitation with his or

her minor child. The recent actions by our General Assembly and the recent Tennessee Supreme Court case of <u>Kendrick v. Shoemake</u> have largely resolved this question by rejecting the substantial harm standard. <u>See</u> Tenn. Code Ann. § 36-6-101(a)(2)(B); <u>see also</u> <u>Kendrick v. Shoemake</u>, 2002 Tenn. LEXIS 489, at *8-9.

In <u>Kendrick</u>, custody of the parties' minor children was given to the wife at the time of their divorce in 1990, with the father having visitation every other weekend. <u>Kendrick</u>, 2002 Tenn. LEXIS 489, at *2-3. In 1998, the father filed an emergency petition seeking custody of the two minor children. <u>Id</u>. at *3. The trial court awarded temporary custody to the father, but later set aside this award. <u>Id</u>. at *3-4.

After a hearing, the trial court granted the father's petition to modify custody. <u>Id</u>. at *5. The trial court found that a change in circumstances necessitated a change in custody, but did not make any specific findings of fact. <u>Id</u>. The mother appealed the trial court's decision to this Court. We reversed the trial court, finding that "a change in custody is not justified unless the change is necessary to prevent substantial harm to the child and that Mr. Kendrick failed to show [the child] would suffer substantial harm absent a change of custody." <u>Id</u>. at *6.

The Tennessee Supreme Court granted permission to appeal to determine the proper standard to be applied when considering a petition to modify child custody. <u>Id</u>. The Court held that "a trial court may modify an award of custody when both a material change of circumstance has occurred and a change of custody is in the child's best interests." <u>Id</u>.

The Court began its analysis with a discussion of <u>Blair v. Badenhope</u>, 77 S.W.3d 137 (Tenn. 2002), a case involving a custody dispute between a parent and a non-parent. <u>Kendrick</u>, 2002 Tenn. LEXIS 489, at *7. The <u>Blair</u> Court held that "once a valid order of custody has been issued, subsequent custody modification proceedings should apply the 'standard typically applied in parent-vs-parent modification cases: that a material change in circumstance has occurred, which makes a change in custody in the child's best interests.'" <u>Id</u>. at *7-8 (quoting <u>Blair</u>, 77 S.W.3d at 148). The <u>Kendrick</u> Court reiterated that the "'threshold issue' is whether a material change in circumstance has occurred after the initial custody determination." <u>Id</u>. at *8 (quoting <u>Blair</u>, 77 S.W.3d at 150). Recognizing that "'[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody,'" the Court listed a series of factors that "have formed a sound basis for determining whether a material change in circumstances has occurred." <u>Id</u>. (quoting <u>Blair</u>, 77 S.W.3d at 150). These factors include: "the change 'has occurred after the entry of the order sought to be modified,' the change 'is not one that was known or reasonably anticipated when the order was entered,' and the change 'is one that affects the child's well-being in a meaningful way.'" <u>Id</u>. (quoting <u>Blair</u>, 77 S.W.3d at 150). In conclusion, the Court noted that a "parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being." <u>Id</u>.

If it can be shown that a material change in circumstance has occurred, then it must be determined whether the modification is in the best interests of the child. <u>Id</u>. at *9 In making a best

interests determination, the factors enumerated at Tennessee Code Annotated section 36-6-106 must be considered.  Id.

As noted by our Supreme Court in Kendrick, the Tennessee General Assembly has recently rejected the substantial harm standard in cases involving modification of custody.  Id. at *8 n.5.  In order to modify custody, the "petitioner must prove by a preponderance of the evidence a material change in circumstance."  Tenn. Code Ann. § 36-6-101(a)(2)(B).  "A material change of circumstance does *not* require a showing of substantial risk of harm to the child."  Tenn. Code Ann. § 36-6-101(a)(2)(B) (emphasis added).

As previously stated, this Court has recognized that the standard used in determining whether to modify an existing visitation arrangement is the same standard used when considering a petition to modify an existing custody determination.  See Solima, 7 S.W.3d at 32-33; see also DuBois, 2001 Tenn. App. LEXIS 274, at *16-17 (citations omitted).  Thus, the standard set forth in Kendrick and Tennessee Code Annotated section 36-6-101(a)(2)(B) is applicable to the present case.

In the case *sub judice*, the trial court did not apply the correct legal standard.  The trial court repeatedly referred to the substantial harm test throughout its oral statements, rulings from the bench, and in its order.  The trial court seemed to rely heavily on the cases of Roberts v. Roberts, No. M2000-00216-COA-R3-CV, 2000 Tenn. App. LEXIS 678 (Tenn. Ct. App. Oct. 5, 2000), and Wall v. Wall, 907 S.W.2d 829 (Tenn. Ct. App. 1995), in making its determination.  The court cited Wall for the proposition that a change of circumstance is defined as "that which requires a change to prevent substantial harm to the child."  Again, the court made reference to Wall, stating that an initial custody determination "is not changeable except for a change of circumstance which is defined as that which requires a change to prevent substantial harm to the child."

In its ruling from the bench, the trial court granted Ms. Scales' motion for directed verdict and dismissed Mr. Mackie's petition "on the basis that he has failed to cross the threshold to provide the Court with evidence that the child[ ] – either has been harmed or is at risk of substantial harm in her current custody."   In its November 21, 2001 order, the trial court found that the "[f]ather had failed to cross the threshold to provide the Court with evidence that either [sic] has been harmed or is at risk of substantial harm in her custody."  The court repeatedly made reference to this threshold test throughout the order, stating that in order for visitation to be modified, the father must "prove there is a risk of harm to the child if the visitation remains as restricted as it currently is."  The court again spoke of this threshold when it stated that "in order to modify the visitation between the Father and the minor child, the Father had the burden of showing harm to the child or a risk of harm to the child before the Court could set up a different visitation schedule."

As our Supreme Court stated in Kendrick, a showing of substantial harm is *not* required to prove a material change of circumstance.  Because the trial court applied the substantial harm test, we reverse and remand so that the trial court may apply the correct legal standard.  In order to modify an existing visitation arrangement, the trial court must find that a material change in circumstance

has occurred, which makes a change in visitation in the child's best interests.  See Kendrick, 2002 Tenn. LEXIS 489, at *6.

We turn now to Mr. Mackie's second issue – whether the trial court erred in refusing to allow Mr. Mackie the opportunity to introduce evidence of a material change in his circumstance.  As the Supreme Court noted in Kendrick, a "parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being." Kendrick, 2002 Tenn. LEXIS 489, at *8.  To the extent that a change in Mr. Mackie's circumstance affects the well-being of his child, Mr. Mackie should be allowed to present evidence regarding his change in circumstances and the improvements he has made in his life.

This Court has recognized the importance of both parents in a child's life.  In Wix v. Wix, this Court stated that "[m]others and fathers each make unique and complementary contributions to their children's welfare and emotional development. Wix v. Wix, 2001 Tenn. App. LEXIS 144, at *32 (Tenn. Ct. App. Mar. 7, 2001) (citations omitted).  In Brewster v. Brewster, this Court again emphasized the importance of a child having both parents, stating "[a] child's interests are well-served by a custody and visitation arrangement that promotes the development of relationships with both the custodial and the noncustodial parent. Brewster v. Brewster, 2001 Tenn. App. LEXIS 268, at *13 (Tenn. Ct. App. Apr. 23, 2001) (quoting Pizzillo v. Pizzillo, 884 S.W.2d 749, 755 (Tenn. Ct. App. 1994)).  "Because of the general belief that children will be harmed substantially if denied interaction and relationship with both parents, Tennessee's courts have repeatedly recognized that custody and visitation arrangements should interfere with the parent-child relationship as little as possible." Wix, 2001 Tenn. App. LEXIS 144, at *32 (citations omitted).  Thus, an opportunity for a child to have a meaningful relationship with her father would affect the child's well-being.

## Conclusion

Accordingly, we reverse the trial court's denial of Mr. Mackie's petition to modify visitation and remand the case to the trial court for further proceedings consistent with this opinion.  We find that the disposition of the first two issues renders unnecessary any discussion of Mr. Mackie's remaining issue.  Costs on appeal taxed to Appellee, Teresa (Mackie) Scales.

_____

_____
ALAN E. HIGHERS, JUDGE

-6-