IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**GREG TOWNSHEND,**

     Petitioner/Appellee,

Vs.

**ERIN BLANDING BINGHAM,**

     Respondent/Appellant.

C.A. No. 02A01-9801-CV-00019
Shelby Circuit No. 149530-8 R.D.

FILED

April 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE D'ARMY BAILEY, JUDGE


Caren B. Nichol of Memphis
For Appellee

Jeffrey A. Land of Memphis
For Appellant


*AFFIRMED AND REMANDED*

Opinion filed:


**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**


**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**


This appeal involves a petition to modify child custody. Respondent-Appellant, Erin Blanding Bingham (Mother), appeals from the order of the trial court granting the petition to modify custody filed by Petitioner-Appellee, Thomas Gregory Townshend (Father).

The parties were married on April 18, 1992. Father is currently a refrigeration repairman, and Mother is currently unemployed having only a very sporadic employment history. Mother has been diagnosed as having a bipolar disorder. The parties' only child, Caitlin Frances Townshend, was born January 22, 1993. After approximately four years of marriage, the parties were divorced by final decree entered March 12, 1996. The final decree of divorce incorporated a Marital Dissolution Agreement which, *inter alia*, granted custody of the parties' minor child to Mother and granted Father reasonable visitation.

On November 6, 1996, Father filed a Petition for Contempt, to Modify Final Decree of Divorce and for Immediate Injunction. In this petition, Father requested, *inter alia*, that he be granted specific visitation because Mother had prevented him from visiting the minor child and Mother did not want him to have any contact with the minor child for a year. Mother subsequently filed an answer to the petition. On November 13, 1996, Father filed a Petition for Temporary Emergency Custody and to Modify Custody asserting that a material change in circumstances has occurred warranting that custody be changed.[1] The petition specifically alleges that Mother was using cocaine in the presence of the minor child and had taken the minor child to the home of one of Mother's friends who is a professional dominatrix.

On November 22, 1996, the trial court appointed a guardian ad litem to represent the child's interests. An evidentiary hearing was held on April 11, 1997, and an order was entered on April 22, 1997 granting emergency temporary custody to Father. On November 5, 6, and 10, 1997, a further evidentiary hearing was held, and on December 17, 1997, an order was entered changing custody of the minor to Father. The order also required Father to pay $1,000.00 of the guardian ad litem fee and Mother to pay $500.00 of the fee, and provided for each party to be responsible for their own attorney's fees.

Mother has appealed and presents the following issues, as stated in her brief, for our review:

> (1) Whether the trial court used the proper standard of review to change custody of the minor child to the father.
> (2) Whether the preponderance of the evidence supports the trial court's decision to change custody of the minor to the father.

---

[1] According to the final order of the trial court, Mother filed an answer to this petition and also filed a counter-petition for contempt and to increase child support. Neither one of these documents is present in the record.

(3) Whether the trial court erred in refusing to allow the attorney for the mother to adequately explore the extent of the multiple personality disorder of Patricia Clay, a key witness against the mother.

(4) Whether the trial court erred in considering the report of the guardian ad litem.

In his brief, Father raises the issues of whether Mother's appeal is frivolous and whether the trial court erred in not awarding him any attorney's fees and in ordering him to pay two-thirds of the guardian ad litem fee.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). This presumption applies in child custody cases. ***Hass v. Knighton***, 676 S.W.2d 554, 555 (Tenn. 1984).

We will consider Mother's first two issues together.

The petition to modify custody filed by Father was prompted primarily by allegations on the part of Patricia Clay that Mother was using drugs in the presence of the minor child and that Mother had shackled the minor child to a sleeper sofa while at Clay's apartment on November 4, 1996. Mother vehemently denies these allegations of drug use and shackling, but admits that she did visit Clay, who she knew to be a professional dominatrix, with the minor child and allowing the child to "play" with Clay's "tools of the trade."

Mother contends that the allegations by Clay are false and prompted by Clay's vindictiveness towards Mother due to allegations by Clay that Mother stole approximately $400.00 from Clay when she came to visit Clay on November 4, 1996. Mother admits that she and the minor child went to visit Clay, who has a multiple personality disorder, on November 4, 1996. She admits that Clay was intoxicated at the time. She further admits that she knew Clay was a professional dominatrix and that Clay's "tools of the trade" were lying around Clay's apartment. It is also undisputed that the minor child was "playing" with the various items used by Clay as a dominatrix. Mother denies that she went to Clay's to smoke crack cocaine and denies that she shackled the minor child to the sleeper sofa so she could use the drug. She states that the minor child had inquired as to what the handcuffs were used for and that she told her that the police use them to "keep bad people from getting away." She further states that she did place

3

one end of the handcuffs around the minor child's wrist and the other end around her own, but released the handcuffs soon after.

It is also undisputed that on November 4, 1996, Clay subsequently passed out on the sofa sleeper and that the minor child fell asleep on the sofa sleeper. Some time afterward, Joe Phillips, an acquaintance of both Mother and Clay, came over to Clay's apartment. Phillips, Mother, and the minor child left Clay's apartment some time that evening while Clay was still passed out on the sofa sleeper. Mother left a note for Clay and took a small amount of marijuana according to Clay and Phillips. Phillips states that he did not see anyone using cocaine nor did it appear that Mother had been using such.

Clay awoke the next morning and alleges that $422.00 was missing from the pocket of her blue jeans. Mother denies the allegation that she stole the money from Clay. A few days later, Clay spoke to Father and told him her version of what had transpired on November 4, 1996. Clay told Father that Mother smoked crack cocaine at her apartment, that the child "played" with Clay's dominatrix equipment, and that Mother shackled the child to the sofa sleeper, thus prompting Father to file the petition to modify custody.

As previously stated, Father based his petition primarily on the above-allegations. He also based the petition on allegations by his brother, Bradley Townshend. Townshend testified that Mother introduced him to crack cocaine and that he and Mother had used crack cocaine together several times during 1996 at his mother's house where Father, Mother, and the minor child were living. During this time, Mother had moved in Father's mother's house even though the two were divorced because of an alleged dispute with her parents that resulted in them allegedly kicking her out of their house. Mother and her mother deny that she was kicked out of their house.

Mother contends that the proof presented to the trial court did not establish that there were changed circumstances justifying a change in custody. Instead, she asserts that the trial court erroneously applied the comparative fitness analysis rather than determining if there had been a change in circumstances to warrant a change in custody as required. Mother contends that Father failed to establish and the trial court failed to require a showing that there had been a change in circumstances sufficient to justify a change in custody. She states that in order to establish a change in circumstances, the trial court must have evidence of the circumstances of

4

the parties at the time custody was awarded. Mother argues that the trial court erroneously limited the evidence to post-divorce matters, thus preventing her counsel from developing the facts to show that no material changes in circumstances had occurred since Father agreed to Mother having custody of the minor child.

Moreover, Mother argues that Father failed to meet his burden of showing by a preponderance of the evidence that a material change in circumstances had occurred to warrant a change in custody. She states that the evidence at trial revealed that there had not been a change in circumstances in that Father agreed for her to have custody of the minor child when he knew that Mother had used cocaine prior to the divorce, that Mother knew Clay prior to the divorce, and that she had visited Clay prior to the divorce. Furthermore, she contends that there was a lack of credible evidence developed at the trial to show that there had been a material change in circumstances.

On the other hand, Father asserts that Mother can not now contend that there was no change in circumstances since she did not make this contention at trial. He states that Mother's counsel never asked the trial judge if he was finding that there was a significant change in circumstances. Nevertheless, Father asserts that the evidence established that there was a material change in circumstances justifying the change in circumstances. Father testified that he was unaware of any drug use by Mother after 1994 until this was brought to his attention by other people especially Clay and his brother. Father also asserts that the undisputed proof of Mother's hostility and hatred toward him and her attempts to shut him out of the minor child's life constitute a change in circumstances to warrant a change in custody especially when combined with Mother's drug use. Father's proof also showed that Mother has a psychological disorder that she has left untreated, that she refuses to allow the child to participate in any extracurricular activities, that she is unemployed and has a very sporadic employment history. He further asserts that Mother has either failed to take the minor child for her shots or failed to keep the records of such, that Mother has never taken the child to the dentist, that she failed to ensure that there was a specialist in place to care for the minor child's congenital heart condition, and that Mother and her family, with whom she resides, have serious fights among one another.

Father argues that Mother admits to taking the child to the home of a known professional dominatrix and to placing the handcuffs on the child. Furthermore, he submits that Mother

admits to allowing the child to stay in Clay's residence and to sleep on the same bed as Clay who was intoxicated and passed out. Given the foregoing, Father asserts that the preponderance of the evidence warranted the change in custody.

A decree awarding custody of children is *res judicata* and is conclusive on a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way to make the welfare of the child require a change in custody. *Long v. Long*, 488 S.W.2d 729, 731-32 (Tenn. App. 1972); *Hicks v. Hicks*, 26 Tenn. App. 641, 176 S.W.2d 371, 374-75 (1943). Thus, a custody order cannot be changed absent a showing of new facts, or "changed circumstances," which require an alteration of the original custody award. *Woodard v. Woodard*, 783 S.W.2d 188, 189 (Tenn. App. 1989).

Child custody cases present primarily factual, not legal questions. *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). Although there is no hard and fast rule as to what constitutes a change in circumstances, *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. App. 1983), it is well settled that the best interest of the child is the paramount consideration in a child custody case. *Contreras v. Ward*, 831 S.W.2d 288, 289 (Tenn. App. 1991). In *Wall v. Wall*, 907 S.W.2d 829 (Tenn. App. 1995), this Court discussed "changed circumstances":

> When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child.

*Id.* at 834 (citation omitted).

The party seeking a change in custody has the burden of proving by the preponderance of the evidence that a change in custody is in the child's best interest. *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. App. 1991). In child custody cases, the welfare and best interest of the child are the paramount concern and the determination of the child's best interest must turn on the particular facts of each case. *Akins v. Akins*, 805 S.W.2d 377, 378 (Tenn. App. 1990) (citing *Holloway v. Bradley*, 190 Tenn. 565, 570-72, 230 S.W.2d 1003, 1006 (1950)). In *Holloway*,

6

the Court stated:

> The determining facts in these adoption and custody cases are so infinite in their variety that the reported decision in one case is of little aid or assistance in settling the next. The supreme rule to which all others should yield is the welfare and best interest of the child.

*Holloway*, 230 S.W.2d at 1006. In *Bah v. Bah*, 668 S.W.2d 663 (Tenn. App. 1983), the court established some guidelines for determining the best interest of a child:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn. App. 1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:
>
> > Fitness for custodial responsibilities is *largely a comparative matter*. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.
>
> *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. App. 1973) (emphasis supplied).

*Bah*, 668 S.W.2d at 666.

As previously noted, there are no hard and fast rules as to what constitutes a change in circumstances. However, Tennessee court's have based modification of child custody decrees on the following criteria: the character of the custodian; the conduct of the custodian; and the child's welfare. W. Walton Garrett, *Tennessee Divorce, Alimony & Child Custody* § 26-5 (1997). Mother's actions in taking the minor child to Clay's apartment, a woman who was intoxicated at the time and who she knew to be a professional dominatrix, in allowing the child to remain in the apartment, and in allowing the child to "play" with Clay's dominatrix equipment call into question her character and conduct and, most importantly, the child's welfare. Moreover, the drug allegations against Mother, her mental condition, her hostility and hatred toward Father, her desire to keep the child from fostering a relationship with Father, her actions with regard to the child's health and participation in extracurricular activities, her employment history, and her paranoia in general bring her character and conduct and the child's welfare under stricter scrutiny.

7

Admittedly, there were conflicts in the testimony. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id.*; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

The record is replete with several instances of behavior on Mother's part that warrant a change in custody for the best interests of the minor child. Taken together, we cannot say that the evidence preponderates against the finding of the trial court that a material change in circumstances has occurred and that the best interests of the minor child are served by the award of custody to Father.

Mother's next issue is whether the trial court erred in refusing to allow the attorney for Mother to adequately explore the extent of the multiple personality disorder of Patricia Clay, a key witness against Mother. The mental capacity of a witness may be an important factor in assessing his or her credibility. Neil P. Cohen et al., *Tennessee Law of Evidence* § 617.1, at 439 (3d ed. 1995); *see* Tenn. R. Evid. 617; *see generally State v. Barnes*, 703 S.W.2d 611 (Tenn. 1985). Clay's mental capacity at the time of the occurrence and at trial was important in determining her credibility. Mother asserts that the trial court erred by not allowing her attorney to fully develop the extent to which Clay, a key witness against her, suffered from multiple personality disorder. She contends that her attorney, if allowed, would have been able to elicit more testimony from Clay which could have altered the trial court's perception of her as a credible witness. Mother argues that the trial court did not avail itself of the necessary information needed to rightfully judge the credibility of Clay.

The record reflects that at one point in the attorney's cross-examination, the judge questioned the extent of the attorney's exploration of the witness's multiple personality disorder. However, the record does not indicate that the judge limited the cross-examination, and Mother's attorney delved into the witness's mental condition apparently to his satisfaction. In any event, if there had been an improper exclusion of evidence by the trial court, the record is clear that

8

Mother's counsel never made an offer of proof of any kind. Thus, this Court cannot rule on the admissibility of evidence when we don't know what the evidence is, and in the absence of an offer of proof and the inclusion of the testimony in the record, this Court cannot consider the alleged error. ***Davis v. Hall***, 920 S.W.2d 213, 218 (Tenn. App. 1995). This issue is without merit.

Mother's last issue for review is whether the trial court erred in considering the report of the guardian ad litem. The record reveals that the trial court, on January 31, 1997, entered by consent an amended order appointing a guardian ad litem in which the parties specifically waived any hearsay objection to the guardian ad litem's report. We note that neither party has referred us to this court order. This issue is totally without merit.

Father presents the issue of whether the trial court erred in not awarding him attorney fees and in requiring him to pay two-thirds of the guardian ad litem's fee.

T.C.A. § 36-5-103(c) (Supp. 1998) authorizes in the court's discretion an award of attorney's fees to a party who successfully pursues or defends a petition for change of custody. ***See D v. K***, 917 S.W.2d 682, 686 (Tenn. App. 1995); ***Gaddy v. Gaddy***, 861 S.W.2d 236, 241 (Tenn. App. 1992). The trial court's grant or denial of an award of attorney's fees should be just and equitable under the circumstances. ***Sherrod v. Wix***, 849 S.W.2d 780, 785 (Tenn. App. 1992).

As for guardian ad litem fees, Tenn. R. Civ. P. 17.03 authorizes the trial court in its discretion to award a reasonable fee for guardian ad litem service. Tenn. R. Civ. P. 54.04(2) specifically includes guardian ad litem fees in the class of allowable discretionary costs. As with the award of attorney's fees, the trial court is allowed broad discretion in the award of guardian ad litem fees. ***McKeehan v. McKeehan***, No. 02A01-9407-CV-165, 1995 WL 695124, at *3 (Tenn. App. Nov. 21, 1995). On appeal, an appellate court may disturb the trial court's award of attorney's fees and guardian ad litem fees only upon a clear showing of abuse of discretion on the part of the trial court. ***Salisbury v. Salisbury***, 657 S.W.2d 761, 770 (Tenn. App. 1983).

From a review of the record, we cannot say that the trial court abused its discretion in the award of guardian ad litem fees and the denial of attorney fees. Furthermore, we believe that the respective parties should bear the expense of their own attorney's fees for this appeal. We decline Father's request to declare this a frivolous appeal.

Accordingly, the judgment of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**