# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
OCTOBER 5, 2000 Session

## ARTHUR BLAIR v. MARILYN BADENHOPE

**Appeal from the Chancery Court for Greene County**
**No. 93-101     Thomas R. Frierson, II, Chancellor**

---

**FILED NOVEMBER 9, 2000**

---

**No. E1999-02748-COA-R3-CV**

---

Arthur Blair ("Father") petitioned the Trial Court to modify a prior custody decree entered by a North Carolina court. Marilyn Badenhope, the child's maternal grandmother, has had custody of the child since the child's infancy. This is Father's second attempt in the Tennessee courts to obtain a modification of the North Carolina decree. In this suit, the Trial Court denied Father's petition, holding that Father failed to show that a material change in circumstances had occurred such that substantial harm to the child would not result if Father was awarded custody. Father appeals and contends that the Trial Court erroneously found no showing of a material change in circumstances and that substantial harm would result to the child if the child was placed in Father's custody. The grandmother does not dispute the Trial Court's ultimate decision, but she contends that the Trial Court only had to inquire as to whether a material change of circumstances had occurred and did not have to determine whether substantial harm would result to the child if custody was changed. We affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed; Case Remanded.**

SWINEY, D. MICHAEL, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., joined, and CHARLES D. SUSANO, JR., J., dissenting.

Edward Kershaw, Greeneville, Tennessee, for the Appellant, Arthur Blair.

John T. Milburn Rogers, Greeneville, Tennessee, for the Appellee, Marilyn Badenhope.

# OPINION

## Background

This appeal arises from a petition for modification of a prior custody decree entered by a North Carolina court. Plaintiff, Arthur Blair ("Father"), filed a petition for modification of custody of Joy Badenhope, his minor child ("Child"), in Greene County Chancery Court. This is Father's second attempt in the Tennessee Courts to obtain custody of the Child. The North Carolina custody decree granted custody to Defendant Marilyn Badenhope ("Grandmother"), the Child's maternal grandmother, and granted visitation to Father. The Trial Court denied Father's request for a modification of custody, finding that Father failed to carry his burden of establishing that a material change in circumstances had occurred and further finding that an award of custody to Father would result in substantial harm to the Child.

The Child was born in 1989 in North Carolina. Father was never married to the Child's mother, Susan Badenhope. Ms. Badenhope died before the Child was a year old. From the time the Child was a small infant, the Grandmother, a Greene County, Tennessee resident, cared for the Child since the mother was ill for months before her death. After the mother's death, the Grandmother filed a petition for custody of the Child in North Carolina.

Father, then a resident of North Carolina, saw the Child for the first time around the time of the mother's death. Father subsequently demanded a paternity test which showed that the Child was his. After the Grandmother filed her custody petition, Father and Grandmother announced a settlement agreement to the North Carolina court which provided the Grandmother with custody and Father with visitation rights. The parties' agreement was accepted by the North Carolina court and entered in 1993. The North Carolina decree is not contained in the record of this matter, nor is there any transcript of the hearing, if any, conducted by the North Carolina court regarding this matter.

Father married in 1993. In order to be near the Child, Father moved from North Carolina to Greene County, Tennessee, where the Grandmother and Child resided. Only one month after the entry of the North Carolina custody decree, Father filed his first petition in a Tennessee court seeking modification of the North Carolina decree. The Trial Court found that although Father was a fit parent, custody should not be modified since Father failed to show a material change in circumstances which would have justified a change in custody. Father appealed that decision which was affirmed by this Court. *Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996). The Tennessee Supreme Court denied Father's Application for Permission to Appeal.

Less than 4 months after the Tennessee Supreme Court's denial in 1997 of Father's Application for Permission to Appeal in the first *Blair v. Badenhope,* Father filed this second petition seeking a change of custody, the subject of this appeal. In the present case, the Trial Court limited its scope of inquiry from the time of the Trial Court's decision concerning the first petition to the filing date of Father's

second petition in 1998.[1]   Father and Step-Mother testified that since the Trial Court's decision in 1995, they have bought a new home in a subdivision which has other children who are close to the Child's age and that the Child has made many friends in their new neighborhood.  Father has developed a stronger bond with the Child since 1995, and according to the Father and Step-Mother, the Child has expressed an interest in living with the Father full-time.  Moreover, the Step-Mother testified that the Child asked the Step-Mother to adopt the Child.  As the Trial Court did in the first petition, the Trial Court in this matter found Father to be a fit parent.

The Trial Court also heard testimony from Father that he often requests additional visitation with the Child, but that the Grandmother often denies these requests.  The Grandmother, however, allows the Child to stay overnight with other relatives despite Father's requests for more time with the Child.

Father's employment requires him to travel out of town, and he works up to sixty-five hours per week.  Despite his work schedule, Father testified that he telephones the Child on a daily basis and makes changes in his work schedule so that he can be at home during the Child's scheduled visitation. Father admitted that he tape-records some telephone conversations with his Child.  The proof also shows that the Grandmother has placed time limitations on the Child's telephone conversations with Father.

The trial testimony establishes that the Child loves Father and enjoys spending time with him.  The proof also shows that the Child has a good relationship with the Step-Mother who takes an active part in caring for the Child during visitation.  However, the Step-Mother had some sort of relationship during 1995 and 1996 with another man, Larry Drummy.  The Step-Mother took overnight trips with this individual and gave him a substantial amount of money for his rent and child support obligations.  Moreover, Mr. Drummy appeared at the Step-Mother's place of employment in late 1996 and caused a scene which prompted the Step-Mother to call the police.  Subsequently, this incident caused the Step-Mother to lose her job.  In addition, the record shows that the Step-Mother took the Child to Mr. Drummy's home located out of town and introduced the Child to Mr. Drummy and his son. At trial, both the Father and Step-Mother denied that a sexual relationship existed between the Step-Mother and Mr. Drummy.  The Trial Court found that these events adversely impacted the stability of the Father's home environment.

In its Order, the Trial Court found that the Grandmother has provided a stable and secure home for the Child and that the Child and Grandmother have a loving bond.   The Trial Court also found that the Child is well-adjusted and happy.  In fact, the parties stipulated that the Child is an "outstanding, well adjusted [sic] happy, wonderful child."  The Grandmother, who is  divorced and a retired registered nurse, also provides a home for one of her other grandchildren.  The Grandmother placed the Child in a private, Christian school where the Child has excelled academically and where the Grandmother has taken

---

[1] Although the Father filed his second petition to modify custody in 1997, the Father filed an amended petition in 1998, and as a result, the Trial Court allowed proof regarding this issue up to the time of the later date.

an active role. Also, the Trial Court found that the Grandmother is capable and willing to foster and encourage a bond between the Child and the Father.

The Trial Court held that the Father failed to carry his burden of showing a material change in circumstances since the Trial Court's decision on his first petition in 1995, and specifically found that an award of custody to Father would result in substantial harm to the Child. Accordingly, the Trial Court denied Father's petition to modify the North Carolina custody decree. Father appeals this denial.

## Discussion

On appeal, Father raises the following issues: 1) whether the Trial Court erred in denying Father's petition due to its finding that the proof did not establish that a material change of circumstances had occurred; and 2) whether the appropriate inquiry to be applied by the Trial Court is whether placing the Child in the Father's custody would no longer result in substantial harm to the Child. As for the Grandmother, although she does not take issue with the Trial Court's ultimate decision, she contends that the Trial Court applied the wrong standard to this matter and should have determined only whether the proof showed a material change of circumstances.

The Trial Court's findings of fact are subject to a *de novo* review by this Court with a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Alexander v. Inman*, 974 S.W.2d 689, 692 (Tenn. 1998). As for the Trial Court's conclusions of law, this Court will conduct a *de novo* review with no presumption of correctness. *See Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

This appeal does not come to us on a clean slate. Not only do we have the original decree from North Carolina, there also exists the earlier decision of this Court in the first suit between these parties on Father's change of custody request.

We have an original child custody decree entered by a North Carolina court. According to the Uniform Child Custody Jurisdiction and Enforcement Act, Tennessee courts are directed to recognize and enforce a foreign custody decree. Tenn. Code Ann. ' 36-6-227; *see also* 28 U.S.C. ' 1738A(a) (directing the new state to give full faith and credit to a foreign state's custody decrees).[2] Moreover, the Full Faith and Credit Clause of the United States Constitution directs that we give full effect to the North Carolina decree. U.S. Const. art. IV, ' 1. Once a custody decree is "made and implemented, [it is] *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." *Crabtree v. Crabtree*, No. E2000-00501-COA-R3-CV, 2000 WL 816807, at * 1 (Tenn. Ct. App. June 23, 2000). This rule recognizes "the importance of stability and continuity" for the child. *Id.* Nevertheless, it is undisputed in this case that the Tennessee Trial Court has jurisdiction to modify the North Carolina custody decree as circumstances and Tennessee law require.

---

[2] This statute is part of the federal Parental Kidnapping Prevention Act.

This case concerns the conflicting interests of the Father who seeks custody of his child and the Grandmother who has had custody of the Child since the Child's infancy. Tennessee courts recognize that the Tennessee Constitution provides a right to privacy found at Article I, Section 8. *In re Askew*, 993 S.W.2d 1, 3 (Tenn. 1999) (citing *Davis v. Davis*, 842 S.W.2d 588 (Tenn. 1992)). Based upon this right to privacy, parents have a constitutional right to care for their children. *Id.* (citing *Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993). The Tennessee Supreme Court in *Askew* held that:

> In light of this right to privacy, we believe that when no substantial harm threaten's [sic] a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit.

*Id.* (quoting *Hawk,* 855 S.W.2d at 577).

This Court in *In re Askew* treated the custody decree as a *modification* of an *initial* custody award and set forth the standard for a modification of a prior custody award in a dispute between a parent and a non-parent as follows:

> [T]he parent must . . . simply establish by a preponderance of the evidence, *changed circumstances showing that an award of custody to the parent would no longer result in substantial harm to the child*. This standard of proof requires evidence establishing that circumstances, which are relevant to the threat of harm to the child and which weigh against any such harm, have *materially changed* since the prior award of custody. This standard of proof further requires that this evidence, taken together with all other proof, establishes the absence of substantial harm to the child in the event of custodial modification.

*In re Askew*, No. 02A01-9708-CV-00201, 1998 WL 652557, at *4 (Tenn. Ct. App. Sept. 24, 1998), *rev'd on other grounds*, 993 S.W.2d 1 (Tenn.1999) (emphasis added).[3] Accordingly, this standard requires Tennessee courts to engage in a two-part inquiry: 1) whether the parent showed by a preponderance of the evidence that there are material changes since the prior custody determination relevant to the threat of harm to the child; and 2) whether the proof established a lack of substantial harm to child if the custody of the child is returned to the parent. *See id.*

_____

[3] The initial custody decree in *Askew* was entered in 1991, and granted custody to the natural parent. Thereafter, the non-parent obtained custody of the child in March, 1994. The natural parent then filed a petition requesting that the March, 1994, decree be set aside or alternatively, alleging that she should be granted custody due to a change in circumstances. The juvenile court granted "'temporary custody'" to the non-parent in August, 1994, and its order stated that it was "'delaying restoration of custody to the natural parents.'" This order was not appealed. In 1996, the natural parent filed a new petition for custody which was ultimately dismissed. The natural parent appealed the dismissal. *In re Askew,* 993 S.W.2d at 2-4.

This Court in *Askew* also drew a distinction between this standard and the standard to be applied in custody disputes involving two parents, holding that:

> In order to modify custody as between two parents, the standard of proof requires the non-custodial parent to establish changed circumstances such that substantial harm to the child would result if custody was left with the custodial parent . . . . Because of parental rights, however, this standard has no application in cases wherein a parent seeks modification of a prior award of custody to a nonparent.

*Id.*, at * 4 (citing *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995); *In re Adoption of Female Child*, 896 S.W.2d 546 (Tenn. 1995)).

On appeal, the Tennessee Supreme Court in *Askew* discussed the constitutional rights of parents and how these rights were to be protected by the court in the context of an initial custody dispute between a parent and a non-parent. *In re Askew,* 993 S.W.2d at 3-4. Our Supreme Court held:

> [I]n a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

*Id.* (quoting *In re Adoption of Female Child*, 896 S.W.2d at 548) (alterations in original).

While the Tennessee Supreme Court in *Askew* found that this Court should not have treated the decree as a valid *initial* custody finding and reversed this Court's decision on that basis, the Tennessee Supreme Court did not find that the standard applied by this Court in *Askew* was erroneous. *See In re Askew*, 993 S.W.2d at 4-5. We hold that this standard complies with the principles of parents' constitutional rights set forth by the Tennessee Supreme Court in *In re Adoption of Female Child* and reiterated in *In re Askew*. *See id.* at 3-4; *In re Adoption of Female Child,* 896 S.W.2d at 548.

This is Father's second attempt to obtain a modification of the initial North Carolina custody decree. The Trial Court in the first case denied Father's petition for modification, and this denial was affirmed on appeal and permission to appeal was denied. *Blair v. Badenhope*, 940 S.W.2d at 576. In the instant matter, Grandmother contends that the applicable standard is the one utilized by this Court in the first *Blair v. Badenhope*. This Court in *Blair* held that the Father's petition should be denied since the Father failed to show a "material change of circumstances sufficient to alter the North Carolina award of custody[.]" *Id.* (citing *Matter of Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995)). In light of

*Askew*, we must determine whether the record reflects a material change in circumstances has occurred such that an award of custody to the Father would no longer result in substantial harm to the Child.

Father contends that the material changes which have occurred since the decision on his 1993 petition are: 1) the stronger bond that has developed between the Father and Child; 2) the testimony from Father and Step-Mother that the Child has expressed a desire to live with Father permanently and to be adopted by the Step-Mother; 3) the Father's and Step-Mother's new home which is located in a neighborhood with children who are close to the Child's age; and 4) the difficulties that Father has experienced in obtaining additional visitation and other problems with the Grandmother's family. We agree that most of these events serve to benefit the relationship that the Father has with the Child and indeed, make their bond stronger. From our review of the record, however, we cannot find that the evidence preponderates against the Trial Court's finding that a material change in circumstances has not occurred since the final order in 1995 in the first suit between these parties. Further, we find that these events are not material changes relevant to the threat of substantial harm to the child. *See In re Askew*, 1998 WL 652557, at *3-4.

In addition, these events, however positive, are not "material changes" since they are not unanticipated changes. This Court has found that a modification of a custody decree is warranted upon a showing of "factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order." *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999) (citing *Blair v. Badenhope*, 940 S.W.2d at 576) (*appl. perm. app. denied*, May 15, 2000). As this Court found in *Blair v. Badenhope*, "[t]he evidence that the [C]hild has grown closer to [the] [F]ather and [S]tep-Mother is a circumstance that is hoped for in granting regular visitation, not an unexpected circumstance." *Blair*, 940 S.W.2d at 576. Moreover, this Court has also found that proof that a parent has a "more commodious or pleasant environment than the other" is not sufficient to warrant modification of a custody decree. *Wall v. Wall*, 907 S.W.2d at 834 (citing *Contreras v. Ward*, 831 S.W.2d 288 (Tenn. Ct. App. 1991)).

Even if the preponderance of the evidence did establish a material change in circumstances, the evidence in the record does not preponderate against the Trial Court's finding that an award of custody to Father would result in substantial harm to the Child. The Child is nearly eleven years old and has been in the custody of the Grandmother since her infancy. The Trial Court found that the Child and the Grandmother have a loving bond and that the Child is well-adjusted and happy. The Grandmother has done an excellent job of caring for the Child, and the Trial Court found that she was willing to maintain and support the bond between the Father and Child. In addition, the evidence in the record before us does not preponderate against the Trial Court's finding that due to the events occurring in 1995 and 1996 between the Step-Mother and Mr. Drummy, the stability of the Blair home environment was adversely impacted. Considering this finding of the Trial Court and the Child's need for stability and continuity, we hold that the evidence in the record does not preponderate against the Trial Court's finding that changing custody would result in substantial harm to the Child. *See Crabtree*, 2000 WL 816807, at * 1 (recognizing the

"importance of stability and continuity" in custody determinations).  Accordingly, we affirm the Trial Court's decision to deny Father's petition for modification of custody.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this matter remanded for further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below.  Costs of this appeal are taxed to the Appellant, Arthur Blair, and his surety.

_____
D. MICHAEL SWINEY, JUDGE